MAXWELL, J.,
for the Court:
¶ 1. A Choctaw County jury found James Mosley guilty of possession of marijuana and cocaine. Mosley was a passenger in a vehicle pulled over for a traffic violation. Officers found the marijuana and cocaine under the passenger seat. On appeal, Mosley challenges: (1) the admission of the evidence seized from the vehicle during the traffic stop, (2) the denial of his offered jury instructions on constructive possession, and (3) the sufficiency and weight of the evidence supporting the jury’s guilty verdict. Finding no error, we affirm.
FACTS
¶ 2. On August 4, 2009, two officers — a Choctaw County deputy sheriff and an agent with the Mississippi Bureau of Narcotics — were surveilling individuals known to be involved in narcotic activity. As they were driving by the home of a suspected drug dealer, a green Chevy Tahoe pulled into the driveway. The officers recognized this vehicle from undercover videos of James Mosley selling narcotics to confidential informants. The officers pulled over to watch the vehicle. They saw Mosley exit the house and get into the passenger’s seat of the Tahoe. The officers followed Mosley to see where he was going.
¶ 3. The officers were directly behind the Tahoe as it came to a four-way stop and made a right turn. Both officers noticed neither the brake lights nor the turn signal was functioning properly. Based on these traffic violations, they pulled over the vehicle. After calling in the traffic stop and running the license plate, the deputy sheriff approached the vehicle’s driver, who identified herself as Mosley’s girlfriend. The MBN agent had already approached the passenger side of the vehicle. The agent asked Mosley to get out of the vehicle based on information from confidential informants that Mosley carried a firearm. The MBN agent noticed marijuana in plain sight on the floorboard.
¶ 4. After issuing Mosley Miranda warnings, the agent asked Mosley if there was anything illegal in the Tahoe. Mosley told him there was marijuana inside a box of plastic sandwich bags and a gun in the driver’s door. The agent searched the vehicle and found the marijuana in the baggie box on the passenger-side floorboard beneath where Mosley had been sitting. Next to the marijuana was crack cocaine inside a folded paper napkin. The agent also found a Colt pistol in the driver’s door.
¶ 5. The officers arrested Mosley and his girlfriend. They later released Mosley’s girlfriend without issuing citations for the traffic violations. The grand jury returned a three-count indictment charging Mosley with (1) possession of a firearm by a convicted felon, (2) possession of less than thirty grams of marijuana, and (3) possession of more than 0.1 but less than 2 grams of cocaine.
¶ 6. Prior to trial, Mosley sought to suppress the drugs and gun as evidence. He claimed the officers stopped the Tahoe in violation of his Fourth Amendment rights. The circuit court denied his motion. Based on the officers’ testimony at the suppression hearing, the circuit court found the officers had a reasonable basis to stop the Tahoe for failure to use brake lights and a turn signal. And based on Mosley’s statement about the marijuana and the gun, they permissibly searched the vehicle leading to discovery of these items and cocaine.
*45 ¶ 7. At trial, because the drugs and pistol were not found on Mosley’s person, the circuit court instructed the jury on constructive possession. The jury could not reach a verdict on the firearm charge, so the circuit court declared a mistrial on that count. But the jury found Mosley guilty of both the marijuana and cocaine-possession counts. The circuit court fined Mosley for the marijuana possession but sentenced him to eight years’ imprisonment for the cocaine-possession charge.
¶ 8. After an unsuccessful post-trial motion, Mosley timely appealed his conviction.
DISCUSSION
I. Motion to Suppress
¶ 9. Mosley argues the trial court erred in denying his motion to suppress the drugs and gun found in the Tahoe. Mosley asserts the basis for the traffic stop was pretextual and manufactured after the fact, as evidenced by the officers’ failure to issue Mosley’s girlfriend a traffic citation. He argues the stop violated the Fourth Amendment’s ban on unreasonable searches and seizures, making the drugs and gun found incident to the stop inadmissible “fruit of the poisonous tree.”
¶ 10. Even if the traffic stop was pre-textual, we agree with the trial court that probable cause existed to stop the vehicle for a traffic violation. And during the lawful traffic stop, the MBN agent saw marijuana in plain sight, and Mosley admitted there was more marijuana in the car. Thus, the search and seizure were reasonable.
A. Standard of Review
¶ 11. “The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.” Lyons v. State, 942 So.2d 247, 250(¶ 11) (Miss.Ct.App.2006). We review the trial court’s denial of a motion to suppress evidence for abuse of discretion. Goff v. State, 14 So.3d 625, 641 (¶ 47) (Miss.2009). We look for “whether substantial and credible evidence existed to support the ruling.” Johnson v. State, 49 So.3d 130, 133 (¶ 6) (Miss.Ct.App.2010) (quoting Baker v. State, 991 So.2d 185, 187 (¶ 6) (Miss.Ct.App.2008)). We will not disturb the trial court’s decision unless we find the trial court “applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence.” Id. (quoting Simmons v. State, 805 So.2d 452, 482 (¶ 65) (Miss.2001)).
B. Fourth-Amendment Traffic Stops
¶ 12. The Fourth Amendment to the United States Constitution and Article 3 section 23 of the Mississippi Constitution protect individuals from unreasonable searches and seizures. U.S. Const, amend. IV; Miss. Const., art. 3, § 23. Traffic stops are Fourth-Amendment “seizures.” Tate v. State, 946 So.2d 376, 382 (¶ 17) (Miss.Ct.App.2006) (citing United States v. Grant, 349 F.3d 192, 196 (5th Cir.2003)). And a passenger of a vehicle that has been stopped has likewise been “seized.” Brendlin v. California, 551 U.S. 249, 257-60, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).
¶ 13. The “fruit of the poisonous tree” doctrine is an exclusionary rule that makes inadmissible tangible evidence obtained incident to an unlawful search or seizure. Marshall v. State, 584 So.2d 437, 438 (Miss.1991) (citing Murray v. United States, 487 U.S. 533, 536, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)); Powell v. State, 824 So.2d 661, 667 (¶27) (Miss.Ct.App.2002). If the traffic stop was unreasonable under the Fourth Amendment, the drugs *46 and gun found during the search of the Tahoe would be inadmissible.
¶ 14. “As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.” Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 185 L.Ed.2d 89 (1996). Under Whren:
[A] traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has “probable cause to believe that a traffic violation has occurred.” This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop.
United States v. Escalante, 239 F.3d 678, 680-81 (5th Cir.2001) (quoting Whren, 517 U.S. at 810, 116 S.Ct. 1769); see Adams v. City of Booneville, 910 So.2d 720, 724-25 (¶ ¶ 16-17) (Miss.Ct.App.2005) (finding officer had “an objective, reasonable suspicion that [the defendant] had committed a traffic violation ... even though [the defendant] was ultimately acquitted of the careless driving charge”). “Probable cause is determined by looking at the totality of the circumstances.” Howard v. State, 987 So.2d 506, 510 (¶ 12) (Miss.Ct.App.2008) (citation and quotations omitted).
¶ 15. “[D]uring a lawful traffic stop an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk.” Brendlin, 551 U.S. at 258, 127 S.Ct. 2400 (citing Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)). If the officer “develops reasonable, articulable suspicion of [additional] criminal activity,” the officer may expand the scope of the stop to include “investigation of the newly-suspected criminal activity.” Shelton v. State, 45 So.3d 1203, 1209 (¶ 15) (Miss.Ct.App.2010) (citing Tate, 946 So.2d at 382 (¶ 18)). When an officer determines an illegal substance is in plain view, the officer then has probable cause to make an arrest and search the vehicle. McCollins v. State, 798 So.2d 624, 628 (¶ 17) (Miss.Ct.App.2001).
C. The Reasonableness of the Stop
¶ 16. The record shows the officers had been surveilling the house of a suspected drug dealer. They saw Mosley, who they knew had sold drugs to confidential informants, leave this house in a green Tahoe, which they recognized from undercover videos of controlled drug purchases. And they decided to tail the Tahoe to see where Mosley was going. Mosley argues this evidence supports that the stop was pretextual and unlawful. But this subjective suspicion that Mosley had drugs is not the test for whether probable cause existed for the traffic stop. Escalante, 239 F.3d at 680-81. Instead, the proper inquiry is whether the officers, under the totality of the circumstances and objective facts available, had probable cause to believe a traffic violation had occurred.
¶ 17. The trial court found the officers did have probable cause. At the suppression hearing, the deputy sheriff testified, while following the Tahoe, he did not see the use of any turn signal or brake lights when the Tahoe stopped and made a right turn, which is a statutory traffic violation. Miss.Code Ann. § 63-3-707 (Rev.2004) (requiring the use of signals before turning and stopping); Miss.Code Ann. § 63-7-27 (Rev.2004) (requiring stop lights that are actuated by applying the brakes and that are visible from 100 feet in the daylight); Miss.Code Ann. § 63-7-7 (Rev.2004) (stating that driving a vehicle that does not have the equipment required in section 63-7-27 is a misdemeanor). The MBN agent offered similar testimony.
*47 ¶ 18. The fact the deputy sheriff did not issue Mosley’s girlfriend a traffic citation did not negate the officers’ probable cause to make the traffic stop. “There is no requirement that an officer issue a citation for the predicate traffic violation to have a valid stop or search.” McCollins, 798 So.2d at 628 (¶ 16) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 116 (¶ 24) (Miss.1999)). In Adams, this court found the officer had objective reasonable suspicion of careless driving, even though the driver was later acquitted of the traffic offense. Adams, 910 So.2d at 725 (¶ 17). Here, based on the totality of the circumstances, we find the officers had objective probable cause that Mosley’s girlfriend had committed the traffic violations. The fact the officers, once they found the drugs and gun, decided to pursue the possession charges and not cite Mosley’s girlfriend for the misdemeanor traffic and vehicle-equipment violations does not alter this probable-cause determination.
¶ 19. During the lawful stop of the Tahoe, the officers ordered Mosley, who they had reason to suspect was armed, out of the vehicle as a safety precaution. Brendlin, 551 U.S. at 258, 127 S.Ct. 2400. The MBN agent saw marijuana in plain sight on the passenger-side floorboard. He arrested Mosley and read him his Miranda rights. The agent then asked Mosley if there was any illegal contraband in the vehicle. Mosley admitted there was marijuana and a gun. Based on the circumstances, we find the officers permissibly searched the vehicle. McCollins, 798 So.2d at 628 (¶ 17) (finding officers were entitled to search the vehicle after seeing an illegal substance in plain sight and arresting the passenger).
¶20. Because no Fourth-Amendment violation occurred, the drugs and gun seized were not “fruit of the poisonous tree.” Therefore, the trial court did not err in denying Mosley’s motion to suppress this evidence.
II. Constructive-possession Jury Instructions
¶ 21. Mosley next argues the circuit court erred by refusing to give his two proposed constructive-possession instructions, D-l[1] and D-4.[2] Because the constructive-possession instruction given by the circuit court fairly announced the law on constructive possession, we find no reversible error.
A. Standard of Review
¶ 22. “In determining whether error lies in the granting or refusal of various *48 [jury] instructions, the instructions actually given must be read as a whole.” Ford v. State, 52 So.3d 1245, 1247(¶ 10) (Miss.Ct.App.2011) (quoting Wess v. State, 926 So.2d 930, 934(¶ 20) (Miss.Ct.App.2005)). “[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id.
¶ 23. “A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence.” Id. (quoting Hager v. State, 996 So.2d 94, 97 (¶ 9) (Miss.Ct.App.2008)).
B. The Sufficiency of the Circuit Court’s Instruction
¶ 24. At the close of trial, the circuit court announced it would give its own jury instruction on constructive possession, C-2, as opposed to Mosley’s instruction, D-l. C-2 instructed:
To constitute possession of a firearm, controlled substance and/or drugs in any amount, there must be sufficient facts to warrant a finding beyond a reasonable doubt that the Defendant was aware of the presence and character of the particular firearm, controlled substance and/or drugs in any amount, and was intentionally and consciously in possession of it. It need not be actual physical possession; constructive possession may be shown by establishing that the firearm, controlled substance and/or drugs in any amount, was subject to the defendant’s dominion or control.
Mosley’s counsel made no protest about C-2. Instead, he directed the court’s attention to D^4, asking it be given in addition to C-2. The circuit court also refused D-4 because it found its wording confusing. D-4 inconsistently used “contraband” and “weapon” and referred to the Tahoe as the “premises.” Ultimately, the circuit court decided not to give D^l because C-2 was a complete statement of law on constructive possession.
¶ 25. On appeal, Mosley attacks C-2 as “exceedingly broad,” “shaded,” and “altogether incomplete, deficient, and misleading.” Mosley’s vitriol against C-2 is misplaced. We fail to see the incorrect law, improper motives, or injustice to Mosley resulting from the court’s decision to give instruction C-2. C-2 contains almost identical language to what has been Mississippi’s controlling definition of constructive possession for four decades.[3] Curry v. State, 249 So.2d 414, 416 (Miss.1971) (cited over fifty times for what constitutes constructive possession). The Mississippi Supreme Court and this court have approved constructive-possession instructions similar to C-2 numerous times. E.g., Breckenridge v. State, 472 So.2d 373, 379 (Miss.1985); Mosley v. State, 396 So.2d 1015, 1018 (Miss.1981); Gross v. State, 948 So.2d 439, 443-44 (¶ 14) (Miss.Ct.App.2006); Taylor v. State, 841 So.2d 1185, 1187(7) *49 (Miss.Ct.App.2003). See also Watts v. State, 974 So.2d 940, 942-43 (¶ ¶ 8-11) (Miss.Ct.App.2008) (holding defendant’s proposed jury instructions were correct statements of the law but were properly refused because there were not supported by the evidence). Because C-2 fairly announces what the jury had to find in order to determine Mosley constructively possessed the drugs, we find the circuit court’s refusal to give D-l and D-4 in addition to C-2 was not reversible error.
¶ 26. We recognize D-l contains language from Curry that is not contained in C-2, specifically that: “Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.” See Curry, 249 So.2d at 416. But this court has previously found this language is not required when instructing a jury on constructive possession. In Bates v. State, 952 So.2d 320, 323-325 (¶ ¶ 10-18) (Miss.Ct.App.2007), the defendant made an argument similar to Mosley’s — that the jury instructions “failfed] to mention that proximity to the drug by itself is not enough to convict a defendant unless incriminating circumstances are also proven.” Id. at 324 (¶ 12) (citing Curry, 249 So.2d at 416). This court found that it was “unnecessary to state that proximity alone is insufficient, because the instructions clearly statefd] all of the elements required.” Id. at (¶ 14). Here, C-2 instructed that the jury had to find beyond a reasonable doubt that (1) Mosley was aware of the presence and character of the drugs and (2) Mosley intentionally and consciously possessed the drugs — which, in the absence of actual possession, may be shown by establishing the drugs were in Mosley’s dominion and control. Smith v. State, 839 So.2d 489, 497 (¶ 21) (Miss.2003) (citing Curry, 249 So.2d at 416) (“The State had to prove that Smith was aware of the cocaine and intentionally, but not necessarily physically, possessed it. Constructive possession may be shown by establishing dominion or control.”). Because C-2 clearly stated the required elements of constructive possession, the “proximity” language in D-l was unnecessary.
¶ 27. D-l and D-4 also contained language concerning when the defendant does not own or exclusively control the premises. See notes 1 and 2, supra. However, contrary to Mosley’s assertion, the absence of a defendant’s exclusive ownership or possession of the premises where the drugs were found do not add elements to constructive possession. Instead, the absence of exclusive ownership or possession of the premises prevents a presumption of the defendant’s constructive possession of anything found on the premises:
The correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebutta-ble. We have held that where contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband.
Powell v. State, 355 So.2d 1378, 1379 (Miss.1978) (citing Sisk v. State, 290 So.2d 608, 610 (Miss.1974)). In other words, if ownership or possession of the vehicle does not create a presumption of constructive possession because that ownership or possession was not exclusive, then the jury must find incriminating circumstances in addition to the defendant’s non-exclusive ownership or possession.
*50 ¶ 28. Here, C-2 specifically instructed, as D-4 did, what competent evidence the jury had to find to connect Mosley with the drugs found in the Tahoe — evidence that Mosley was “intentionally and consciously in possession” of the marijuana and cocaine and that Mosley had dominion and control over the marijuana and cocaine, not just the vehicle in which it w;as found. C-2 did not instruct the jury to presume Mosley constructively possessed the drugs found in the Tahoe if it found Mosley exclusively owned or possessed the vehicle. Cf. Wood v. State, 322 So.2d 462, 465-66 (Miss.1975) (example of jury instruction on presumption of constructive possession). Therefore, the circuit court did not err in failing to instruct the jury on what evidence to look for if the presumption does not arise. Cf. Townsend v. State, 681 So.2d 497, 509 (Miss.1996) (discussing how deficient instruction that person exercising control over premises would have been cured by instruction that defendant was consciously possessing and had dominion and control over substance).
III. The Sufficiency and Weight of the Evidence
¶29. Mosley finally argues the circuit court erred in denying his motion for a directed verdict and his motion for a new trial.
A. Sufficiency of the Evidence
¶ 30. A motion for a directed verdict, like a motion for a judgment notwithstanding the verdict, challenges the sufficiency of the evidence and asks for acquittal. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). “[Vjiewing the evidence in the light most favorable to the prosecution, [we ask whether] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 31. The two essential elements of drug possession are (1) knowledge and (2) possession. Knowledge is the defendant’s awareness of the presence and characters of the drugs. Possession is the intentional and conscious possession of the drugs, which does not have to be actual possession but instead can be established by the defendant’s exercise of dominion and control over the drugs. Smith, 839 So.2d at 497 (¶ 21); Curry, 249 So.2d at 416.
¶ 32. The MBN agent testified that Mosley, when asked if there was anything illegal in the Tahoe, admitted there was marijuana in the baggie box on the passenger-side floorboard. Though Mosley did not mention the cocaine, the agent found the cocaine next to the marijuana. Both drugs were located right where Mosley had just been sitting and in the same area that Mosley indicated the marijuana was located. Viewing this evidence in the light most favorable to the State, we find a rational jury could have found beyond a reasonable doubt that Mosley was guilty of knowingly possessing both the marijuana and the cocaine.
B. Weight of the Evidence
¶ 33. A motion for new trial challenges the weight of the evidence and asks for a new trial. Bush, 895 So.2d at 844 (¶ 18). Viewing the evidence in the light most favorable to the verdict, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id.
¶ 34. Mosley reframes his Fourth Amendment argument into a claim the jury’s verdict was unjust. He rehashes his earlier argument that evidence seized from the Tahoe was inadmissible fruit of the poisonous tree. He claims because the evidence should have been excluded, the verdict based upon this evidence cannot stand. Because we determined the offi *51 cers had probable cause to stop and search the vehicle, we find no unconscionable injustice in the jury’s guilty verdict based on this lawfully obtained evidence.
¶ 35. THE JUDGMENT OF THE CHOCTAW COUNTY CIRCUIT COURT OF CONVICTION OF COUNT II, POSSESSION OF LESS THAN THIRTY GRAMS OF MARIHUANA, A SCHEDULE I CONTROLLED SUBSTANCE, AND SENTENCE TO PAY A FINE OF $250, AND COUNT III, POSSESSION OF MORE THAN 0.1 BUT LESS THAN 2 GRAMS OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE, AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND SUSPENSION OF DRIVING PRIVILEGES FOR SIX MONTHS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CHOCTAW COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR.

. D-l instructed:
Possession, as that term is used in this case, may be actual or constructive. A person has actual possession when he or she knowingly has direct, immediate, and exclusive physical control over the thing or object. A person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention, at a given time, to exercise control or dominion over the thing or object. Constructive possession may be shown by establishing that the thing or object involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances. When the defendant is not the owner of the premises the State must show additional incriminating circumstances to justify a finding of constructive possession. The same is true when a defendant is not in exclusive control of the premises.

. D-4 instructed:
In cases where the Defendant is not the owner of the premises or in exclusive possession, the State must prove some competent evidence connecting him with the contraband. To fulfill this requirement, there must be evidence that the Defendant was intentionally and consciously in possession of the weapon on the day charged.

. Cuny describes constructive possession as follows:
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession” is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Curry, 249 So.2d at 416.