910 So.2d 720 (2005)
Henry ADAMS, Appellant
v.
CITY OF BOONEVILLE, Mississippi, Appellee.
No. 2003-KM-02179-COA.
Court of Appeals of Mississippi.
March 22, 2005.
Kenneth E. Floyd, II, Booneville, attorney for appellant.
William W. Smith, Booneville, attorney for appellee.
Before BRIDGES, P.J., IRVING and MYERS, JJ.
*721 MYERS, J., for the Court.
¶ 1. On January 1, 2003, Henry Adams was charged with driving under the influence ("DUI"), first offense. On May 8, 2003, Adams was convicted of DUI, first offense, in the municipal court of Booneville. Adams appealed that conviction to the Circuit Court of Prentiss County. On June 26, 2003, the circuit court conducted a de novo trial, and on June 27, 2003, the circuit court also found Adams guilty of DUI, first offense.
¶ 2. Aggrieved by his conviction, Adams now appeals, raising the following single issue:
DID THE CIRCUIT COURT ERR IN RULING THAT THERE WAS REASONABLE SUSPICION FOR THE STOP OF ADAMS'S VEHICLE?

FACTS
¶ 3. Officer Brad Taylor, and Reserve Officer Jeremy Pace were on patrol in Booneville on New Year's Eve and the early hours of New Year's Day. At around 2:30 a.m., Officer Taylor noticed that a vehicle, traveling northward on Hwy 145, was riding in the middle of the two northbound lanes. This particular road is a four lane road. Thus, the vehicle was riding in the middle of two lanes that were headed in the same direction, and there was no danger to any oncoming, south bound vehicles. According to Officer Taylor, there was nothing else about the vehicle or the way it was being driven to excite his suspicions other than the fact that he observed it driving down the middle of two lanes of traffic. Reserve Officer Pace, however, did testify that he saw the vehicle swerve in the road. Officer Taylor turned his patrol car around and proceeded to make a traffic stop in order to issue a citation for careless driving. By the time Officer Taylor turned his car around and made it into the northbound lane, the vehicle was in the left lane, preparing to make a left turn into a gas station.
¶ 4. At the gas station, when the stop was made, Adams, the driver of the vehicle, got out of his car and approached Officer Taylor. As Adams neared, Officer Taylor noticed the scent of alcoholic beverage about the person of Adams. In addition, Officer Taylor testified that Adams's speech was slurred and that Adams had some difficulty keeping his balance. Based upon these circumstances, Officer Taylor suspected that Adams was intoxicated. Officer Taylor then proceeded to administer three field sobriety tests, none of which Adams passed. Due to his faulty performance on the field sobriety tests, Adams was taken to the justice center and given an Intoxilyzer test. Adams's alcohol level registered as .172, well in excess of the legal limit of .08. Based upon the results of the intoxilyzer test, Adams was charged with DUI, first offense.

LEGAL ANALYSIS

DID THE CIRCUIT COURT ERR IN RULING THAT THERE WAS REASONABLE SUSPICION FOR THE STOP OF ADAMS'S VEHICLE?
¶ 5. Adams argues that the stop was illegal, because there was no objective reason for the officer to stop the vehicle, and he maintains that he did nothing more than make the legal maneuver of changing lanes. Adams argues further that, objectively, there were no facts that should have given rise to a reasonable suspicion that a traffic violation or other crime had been or was being committed.
¶ 6. The City argues that, based upon what he observed, Officer Taylor had a reasonable belief that the traffic violation of careless driving had occurred and, therefore, there was probable cause for the stop of Adams's vehicle.

*722 STANDARD OF REVIEW
¶ 7. For assignments of error challenging a trial court's judgment on reasonable suspicion and probable cause we employ de novo review. Floyd v. City of Crystal Springs, 749 So.2d 110, 113(¶ 11) (Miss.1999). In addition, we "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. Thus, while we review the lower court's legal conclusions on probable cause and reasonable suspicion de novo, we must accept the fact findings that led the lower court to that legal conclusion unless there is clear error in those fact findings. Id.

DISCUSSION
¶ 8. The case of Floyd v. City of Crystal Springs, cited above, very clearly states the law in Mississippi on the question of probable cause for traffic stops. The Floyd court declared:
The constitutional requirements for an investigative stop and detention are less stringent than those for an arrest. This Court has recognized that "given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest," that is, on less information than is constitutionally required for probable cause to arrest. Singletary v. State, 318 So.2d 873, 876 (Miss.1975). See also McCray v. State, 486 So.2d 1247, 1249 (Miss. 1986). Such an investigative stop of a suspect may be made so long as an officer has "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a felony...." McCray, 486 So.2d at 1249 (quoting United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604, 612 (1985)), or as long as the officers have "some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." McCray, 486 So.2d at 1249-50 (quoting [U.S. v.] Cortez, 449 U.S. [411] at 417, 101 S.Ct. [690] at 695[, 66 L.Ed.2d 621 (1981)]).
The United States Supreme Court approved this investigatory procedure in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In determining whether there exists the requisite "reasonable suspicion, grounded in specific and articulable facts," the court must consider whether, taking into account the totality of the circumstances, the detaining officers had a "particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18, 101 S.Ct. at 694-95 (citing Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)).
Floyd, 749 So.2d at 114-15 (¶¶ 16-17). In a somewhat condensed fashion, we have also stated this standard as follows:
[T]he test for probable cause in Mississippi is the totality of the circumstances.... It arises when the facts and circumstances with an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.'
Harrison v. State, 800 So.2d 1134, 1138(¶ 18) (Miss.2001) (quoting Conway v. State, 397 So.2d 1095, 1098 (Miss.1980)).
¶ 9. Having reviewed above the general law on probable cause for traffic stops, as stated in Floyd and Harrison, we now *723 turn to the particulars of the present case. The statute under which Adams was stopped reads in relevant part:
Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving. Careless driving shall be considered a lesser offense than reckless driving.
Miss.Code Ann. § 63-3-1213 (Rev.2004). Adams's driving in the middle of the two northbound lanes constituted, in Officer Taylor's opinion, a violation of this statute.
¶ 10. We have previously addressed challenges to stops based on Mississippi Code Annotated § 63-3-1213. In one recent case we held that "[c]arelessness is a matter of reasonable interpretation, based on a wide range of factors." Henderson v. State, 878 So.2d 246, 247(¶ 8) (Miss.Ct.App. 2004). In the Henderson case we also noted, "As a general rule, `the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'" Henderson, 878 So.2d at 247(¶ 7) (quoting Whren v. U.S., 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Applying these two principles to the particular facts of that case, the Henderson court held:
The officer witnessed the vehicle that Henderson was driving approach the curb twice. This indicates that Henderson was driving without due regard for the width and use of the street. The officer's observations were enough for him to determine that careless driving had taken place.
Further, this Court has determined that failure to have regard for the width and use of the street by swerving off the side of the road or crossing the marker lines constitutes probable cause for a traffic stop.
Henderson, 878 So.2d at 247 (¶¶ 7-8). Thus, in the Henderson case, the fact that the officer observed the vehicle approached the curb twice was held to provide probable cause for a traffic stop for careless driving. The stop ultimately revealed that Henderson had a blood alcohol content above the legal limit and later led to Henderson's conviction for possession of cocaine.
¶ 11. Approaching a definition of the kind of driving that will violate the careless driving statute, our supreme court has observed, "[T]he [careless driving] statute echoes the familiar tort law standard, requiring that drivers on Mississippi roads exercise the same standard of care as a prudent person would in the same circumstances." Leuer v. City of Flowood, 744 So.2d 266, 270(¶ 14) (Miss.1999). This principle from the Leuer case sheds some light on the kind of driving that may justifiably prompt an officer to make a stop under Miss.Code Ann. § 63-3-1213.
¶ 12. The Leuer case is also helpful because of its factual similarity to the case sub judice. In Leuer the court found:
Officer Harper had a reasonable suspicion that Leuer was driving "under the influence" when he observed Leuer run off the road onto the shoulder, make a left turn and then go out into the middle of the roadway at 2:30 a.m. Once Leuer pulled over, Harper observed that Leuer smelled strongly of alcohol and had glassy eyes and difficulty speaking. Harper opined that Leuer was "under the influence" of intoxicating liquor. Leuer admitted having alcoholic drinks earlier in the evening, but predictably denied having anything else since 10:30 p.m.
Leuer, 744 So.2d at 269(¶ 12). As the quote above demonstrates, the facts of the Leuer case are very similar to the facts in *724 the case sub judice. In Leuer, an officer observed some driving irregularities, or driving that did not appear to conform with driving of prudent and, presumably, sober persons in the same circumstances (going off the road onto the shoulder and traveling in the middle of the roadway), very late at night (or very early in the morning, depending upon how one measures the hour). Id. Also, after the stop the driver of the vehicle exhibited signs of intoxication and admitted to having drunk alcoholic beverages earlier in the evening. Id. These facts were held to constitute a legal stop for careless driving, and the subsequent charge and conviction of driving under the influence was upheld. Id. at 270(¶ 16).
¶ 13. Here, in the case sub judice, Officer Taylor observed, very late at night (at 2:30 a.m.) one of the specific driving irregularities mentioned in the Leuer case: driving in the middle of the road. In addition, after the stop, Adams exhibited signs of intoxication and admitted to having drunk alcoholic beverages earlier in the evening. Thus, the holding and the analysis found in the Leuer case support affirming the judgment of the circuit court in the case sub judice.
¶ 14. As something of a sub-argument, Adams contends that since he was acquitted of the careless driving charge in municipal court, this proves that there was no probable cause or reasonable suspicion to stop him. In making this argument, however, Adams misunderstands our law on this subject. Our supreme court has held that probable cause may be present even if the officer turns out to have based his conclusions on a mistake of law. The case of Harrison v. State, 800 So.2d 1134 (Miss.2001), sets forth this principle.
¶ 15. In Harrison, the court declared that a good faith, reasonable belief that a traffic law has been violated may give an officer probable cause to stop a vehicle, even though, in hindsight, a mistake of law was made and the defendant is acquitted of the traffic violation. Id. at 1138-39 (¶¶ 19-21). The issue is not whether the defendant is ultimately found guilty of the traffic violation; rather, the issue is whether or not the officer reasonably, and objectively believed that a traffic violation had occurred. Id. at 1139(¶ 20). Put another way, the issue is not what the officer discovers later, but rather what the officer reasonably believed at the time of the stop. Id. Thus, based upon the holding in Harrison, in the case sub judice the State correctly argues that Adams's acquittal on the careless driving charge does not, by itself, settle the issue of probable cause for the stop. Adams's argument in this regard, therefore, lacks merit.
¶ 16. We do, however, agree with Adams's contention that a traffic stop must have an objective basis, and we also accept the logical corollary to that contention, namely that a traffic stop must be based upon more than a pure, subjective conclusion or "hunch" of the officer's. The case of U.S. v. Escalante makes this plain in its discussion of the test under Whren v. U.S.:
[U]nder Whren v. United States, a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has "probable cause to believe that a traffic violation has occurred." This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop. On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no "objective basis" for the stop, and the stop is illegal.
U.S. v. Escalante, 239 F.3d 678, 680-81 (5th Cir.2001). Thus, Escalante makes it *725 clear that there must be an objective basis for the stop.
¶ 17. Yet, accepting this principle from the Escalante case, we cannot say that in the case sub judice it is clear that what Officer Taylor observed did not or could not constitute a violation of the cited traffic law. Nor can we say that there was no objective basis for the stop of Adams's vehicle. Based upon our review of the record, we do not find the present case to be one in which the officer acted without any objective reason or on the basis of a purely subjective feeling or "hunch." On the contrary, viewing the totality of the circumstances, we find that Officer Taylor did have an objective, reasonable suspicion that Adams had committed the traffic violation of careless driving, even though Adams was ultimately acquitted of the careless driving charge.
¶ 18. We do not disagree with the trial judge's observation that this case is a "close call;" nevertheless, we conclude that there was probable cause for the stop of Adams's vehicle. In support of this conclusion, we note some of the circumstances surrounding the stop: the time of night was very late (or very early depending upon how one chooses to measure the hour); the particular night, New Year's Eve, is one on which persons are widely known to celebrate and often consume alcohol; in Officer Taylor's observation, the vehicle was traveling without due regard for the width and use of the highway by traveling in the middle of two lanes of traffic; and the reserve officer accompanying Officer Taylor saw the vehicle swerve. All of these circumstances serve to bolster the conclusion that Adams appeared to Officer Taylor, at that particular time, to be driving without due regard for the width and use of the highway, or, in other words, in violation of the careless driving statute.
¶ 19. Adams also argues that the trial judge improperly relied upon factors that were not testified to by the officer as prompting his decision to make the stop, such as the time of night. But we note again that the probable cause inquiry looks to the totality of the circumstances. Harrison, 800 So.2d at 1138(¶ 18). Thus, it was not error for the judge to consider all of the relevant factors present in order to gain a clearer picture of the totality of the circumstances confronting the officer at the time. Adams's argument in this regard lacks merit.
¶ 20. Based upon the foregoing discussion, we cannot say that the officer's decision to stop Adams's vehicle was unreasonable or lacked an objective basis in the law or facts. Therefore, we find that the circuit court did not err in ruling that the stop of Adam's vehicle was legal. The judgment of the circuit court, therefore, is affirmed.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF PRENTISS COUNTY OF CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND FINE OF $518.50 AND STATE ASSESSMENTS OF $208.50 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.