987 So.2d 506 (2008)
Randy Shon HOWARD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00799-COA.
Court of Appeals of Mississippi.
July 29, 2008.
*507 Edmund J. Phillips, Christopher A. Collins, attorneys for appellant.
Office of The Attorney General by Laura Hogan Tedder, attorney for appellee.
Before MYERS, P.J., IRVING and CARLTON, JJ.
MYERS, P.J., for the Court.
¶ 1. Randy Shon Howard was convicted in the Circuit Court of Neshoba County of Count I, possession of more than 0.1 gram and less than two grams of methamphetamine and sentenced to serve eight years in the custody of the Mississippi Department of Corrections and ordered to pay a fine of $1,500; Count II, possession of less than thirty grams of marijuana and ordered to pay a fine of $250. Howard claims the circuit court erred by: (1) removing juror Evelyn Burkes from the jury and seating an alternate juror; (2) denying his motion to suppress the results of a search and in overruling his objection to the introduction of the results of the search into evidence; and (3) overruling his objection to the State's redirect examination of the forensic examiner for the Mississippi Crime Laboratory, Brandi Goodman, on a matter not covered in the cross-examination. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Officer Richard Sistrunk, a narcotics officer with the Neshoba County Sheriff's Department, and Deputy Grant Myers were patrolling in a marked car on Road 759 in Neshoba County on October 19, 2005. While on patrol, the officers spotted Howard in a red four-wheeler traveling at a high rate of speed on a public highway. The officers testified that the four-wheeler did not have a tag, appeared to be speeding, and was also traveling on the public road. The officers attempted to stop Howard by flashing their lights and sounding their siren, but to no avail. The officers had to travel at approximately eighty miles per hour to catch up with him. The officers then approached Howard and asked *508 him for his driver's license. While either seated on the four-wheeler or standing next to it, Howard unzipped his fanny pack and reached for his license. Officer Sistrunk testified that he was able to observe a plastic bag containing a green leafy substance that he believed to be marijuana in Howard's fanny pack when Howard looked for his license. Upon observing the plastic bag, Officer Sistrunk testified that he retrieved the bag from Howard's possession. Officer Sistrunk also testified that Deputy Myers looked further into the fanny pack and retrieved two plastic bags containing a crystal-like substance believed to be methamphetamine. At the time of the search, both officers were in plain clothes with t-shirts containing the Neshoba County Sheriff's Department logo and with their badges visible.
¶ 3. Howard's girlfriend, Megan Stovall, also testified that she witnessed the incident from a window inside her and Howard's home, which was near where Howard was pulled over. Howard, through the testimony of Stovall, disputed the accounts of the arresting officers. Howard claimed that the officers searched his fanny pack and seized its contents without first having an opportunity to observe the contents of the pack legally.
¶ 4. At trial, Goodman testified as an expert in the field of forensic science, specifically as an expert in the field of identification of a controlled substance. She identified the two different substances found in Howard's fanny pack as marijuana and methamphetamine from the testing she performed at the Mississippi Crime Laboratory.
¶ 5. Howard was convicted on both counts by a jury, and it is from this conviction that he now appeals.

DISCUSSION

I. WHETHER THE CIRCUIT COURT ERRED IN DISMISSING A JUROR AND REPLACING THE JUROR WITH AN ALTERNATE JUROR AFTER THE JURY HAD BEEN SEATED.
¶ 6. Howard argues on appeal that the circuit court erred in dismissing juror Evelyn Burkes after the jury was seated and the first witness had been called, but before direct examination had begun. Burkes was dismissed by the circuit court when it was discovered that she previously had worked with Howard's father, Randolph Howard. Howard argues that the State failed to ask whether Burkes knew Howard's father and that she was not required to disclose that she once worked with his father. Howard argues additionally that more than ten years had elapsed since Burkes and Randolph had worked together. Further, Howard points out that Burkes worked inside the office, while Randolph worked outside. Howard contends that there had been minimal interaction between the two, and there was no showing that Burkes knew or even recognized Randolph. Further, Howard asserts that there was no evidence that Burkes knew that Randolph was Howard's father. Howard argues that merely questioning a juror about whether he or she knows the defendant is not enough to elicit whether the juror ever worked with or knew any of the defendant's family. Howard, therefore, contends that the State's question was imprecise and unclear and failed to solicit whether Burkes knew Howard's father. Howard argues that the State failed to show that Burkes withheld information or misrepresented material facts; therefore, he asserts that Burkes was qualified to serve as a juror. Additionally, Howard argues that Burkes did not consider herself to have a relationship of sufficient closeness to warrant a response, and since the questions during voir dire did not specifically *509 ask about any type of interaction with Howard's father, she did not knowingly withhold important information.
¶ 7. The State argues the circuit court was correct to dismiss the juror since the juror was less than candid in failing to disclose that she had worked with Howard's father, Randolph, at Philadelphia Utilities. The State argues that in light of the candid response received from other jurors, specifically juror Horace Griffith, who when asked whether any of the prospective jurors knew Howard, replied that he grew up with Howard's father, Randolph, and lived near Randolph. Further, the State argues that Howard has failed to demonstrate that he suffered actual prejudice as a result of the juror substitution.
¶ 8. "The trial court has sound discretion to remove jurors from the jury." Mills v. State, 813 So.2d 688, 691(¶ 8) (Miss.2002) (citing King v. State, 784 So.2d 884, 887(¶ 12) (Miss.2001)). This Court will only disturb the removal of a juror if it is found to be an abuse of discretion. Vaughn v. State, 712 So.2d 721, 724(¶ 12) (Miss.1998). A defendant must demonstrate that actual prejudice resulted from the dismissal and substitution of the juror with an alternate juror. Id. at 725(¶ 15).
¶ 9. In making its ruling, the circuit court considered Randolph's testimony that he recognized juror Burkes during voir dire. Further, the circuit court stated that in light of the relatively small number of persons present in the courtroom, it assumed that Burkes likely recognized Randolph in the courtroom. While the circuit court could not find outright that Burkes committed any wrongdoing, the court did excuse Burkes to avoid the appearance of impropriety. Therefore, in light of the failure by Howard to demonstrate any actual prejudice suffered by the dismissal of juror Burkes, this issue is without merit.

II. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING IN EVIDENCE PRODUCED FROM OFFICER SISTRUNK'S AND DEPUTY MYERS'S SEARCH AND SEIZURE.
¶ 10. On appeal, Howard argues that the circuit court erred in denying his motion to suppress the fruit of the search and in overruling his objection to its introduction into evidence. Howard argues that the search performed by Officer Sistrunk and Deputy Myers was invalid because (1) the probable cause was pretextual, and (2) a traffic stop is not grounds for a search. Howard argues that the officers were narcotics officers, not traffic officers, making the stop for a traffic violation pretextual. Howard also notes that they failed to issue him any traffic tickets as a result of the stop. Therefore, Howard argues that since the traffic violations were the probable cause for stopping him and no tickets were issued for those alleged violations, no probable cause existed for the search and seizure.
¶ 11. The State argues on appeal that there was sufficient probable cause to believe that a traffic violation had occurred, justifying the officers' actions in stopping Howard. Additionally, the State argues that there is no requirement that a traffic stop result in the issuance of a traffic citation in order for the initial stop to be valid. The State contends that the marijuana seized from Howard was in plain sight at the time it was taken from Howard, and the search of the remaining contents of the fanny pack where the marijuana was recovered was also lawful.
¶ 12. It should first be noted that the "prohibition against unreasonable searches and seizures `applies to seizures of the person, including brief investigatory stops such as the stop of a vehicle.'" Floyd *510 v. City of Crystal Springs, 749 So.2d 110, 114(¶ 14) (Miss.1999) (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). This Court further recognizes that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id. at 115(¶ 18) (quoting Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Probable cause is determined by looking at "the totality of the circumstances." Comby v. State, 901 So.2d 1282, 1286(¶ 7) (Miss.Ct.App.2004). "The evidence in support of probable cause `must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search.'" Id. (quoting United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir.1990)).
¶ 13. Although this case involved an all-terrain vehicle, the same principles still apply. Here, the officers testified that Howard was stopped because they witnessed him driving an all-terrain vehicle illegally on a public road, and he was also speeding. The officers further testified that they spotted drugs when Howard opened his fanny pack to retrieve his license. When Officer Sistrunk spotted the substance, which appeared to be marijuana, he retrieved it from the fanny pack. At the time he spotted the marijuana, he was performing a traffic stop based on the fact that Howard was speeding and riding an unauthorized vehicle on the public road. This Court has held:
While a warrant is generally required before the search for or seizure of evidence may be conducted, no warrant is required to seize an object in plain view when viewed by an officer from a place he has the lawful right to be, its incriminating character is readily apparent and the officer has a lawful right of access to the evidence.
McKee v. State, 878 So.2d 232, 236(¶ 9) (Miss.Ct.App.2004) (citing Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). Additionally, after Officer Sistrunk viewed the marijuana and retrieved it from the fanny pack, testimony established that Deputy Myers then reached inside the fanny pack to retrieve two more plastic bags containing a crystal-like substance believed to be methamphetamine. "If, in the process of making that legitimate search and seizure, [an officer] uncovered evidence of another crime, as he did here, he is not required to ignore such evidence nor does the Fourth Amendment require its suppression." Id. at 236(¶ 11) (citing Michigan v. Long, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).
¶ 14. The circuit court held a hearing outside the presence of the jury to determine whether to allow in the fruit of the search. The circuit court subsequently allowed the evidence in at trial. This Court finds no error in the circuit court's determination that there was sufficient probable cause to believe a traffic violation occurred, thus necessitating the traffic stop. Further, testimony established that after asking Howard for his license, Officer Sistrunk viewed a substance appearing to be marijuana in plain sight. Officer Sistrunk retrieved the suspected marijuana, which was in plain sight, and subsequently discovered two additional plastic bags containing what appeared to be methamphetamine. As such, we find that this issue is without merit.

III. WHETHER THE CIRCUIT COURT ERRED IN DENYING HOWARD'S OBJECTION TO THE SCOPE OF THE REDIRECT OF THE EXPERT WITNESS, GOODMAN.
*511 ¶ 15. Howard next objects to the redirect examination of Mississippi Crime Laboratory forensic scientist Goodman. Howard argues that the prosecutor, on redirect, improperly questioned Goodman about a matter not discussed in the cross-examination. Howard contends that the cross-examination only covered Goodman's use of scales to weigh the drugs. Howard objected to the line of questioning on redirect that asked Goodman whether the machinery was working correctly on the day in question.
¶ 16. The State argues that defense counsel, by questioning the calibration of the scales, clearly opened up a line of inquiry into whether the machine was functioning correctly. Thus, the State contends that the questions on redirect were within the scope of the cross-examination. The State cites to Manning v. State, 835 So.2d 94, 99-100(¶ 15) (Miss.Ct. App.2002) for the proposition that "trial courts have broad discretion in allowing or disallowing redirect examination of witnesses, and when the defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on redirect is unquestionably entitled to elaborate on the matter."
¶ 17. This Court must determine whether the circuit court abused its discretion in overruling Howard's objection to the scope of the State's redirect examination of Goodman. Farris v. State, 906 So.2d 113, 120(¶ 20) (Miss.Ct.App.2004). During the cross-examination, Howard asked if the scales were calibrated on the date Goodman analyzed the substances in question. Goodman replied that the scales were not calibrated; instead, the procedure was to place a known weight on the scale to make sure that the scale was reading properly. In response, on redirect, the State asked whether the machine was working properly on the date she weighed the substances in question. We agree with the circuit court that this line of questioning was within the scope of the cross-examination. In addition, Howard was given an opportunity to address this line of questioning by the State on redirect, but did not. We find this issue is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF COUNT I  POSSESSION OF MORE THAN 0.1 GRAM AND LESS THAN TWO GRAMS OF A SCHEDULE II CONTROLLED SUBSTANCE, NAMELY METHAMPHETAMINE, AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND A FINE OF $1,500; COUNT II  POSSESSION OF LESS THAN THIRTY GRAMS OF A SCHEDULE II CONTROLLED SUBSTANCE, NAMELY MARIJUANA, AND A FINE OF $250, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.