BARNES, J., for the Court:
¶ 1. David Trejo appeals his conviction of possession of cocaine with intent to sell and sentence of sixty years as a habitual offender in the custody of the Mississippi Department of Corrections (MDOC). As there was no probable cause or reasonable *704 suspicion to justify the initial traffic stop, we find that Trejo’s motion to suppress the evidence of the cocaine was erroneously denied by the circuit court. Accordingly, we reverse and render a judgment of acquittal.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. At approximately 1:00 a.m. on January 21, 2005, Trejo and his passenger, Pebbles Nutt, were traveling north on Interstate 55 between Madison, Mississippi and Canton, Mississippi. Trejo’s red Chevrolet SUV bore a Texas license plate. Trejo was traveling in the left-hand lane of the interstate at a speed of approximately sixty miles per hour (mph). The maximum posted speed limit was 70 mph; the minimum posted speed limit was 45 mph. Sergeant Chris Picou (Officer Picou) of the Madison County Sheriffs Department, who was traveling in the same direction, approached Trejo’s vehicle, and began to follow him. Officer Picou flashed his high-beam lights into Trejo’s vehicle in three quick successions, in order to get Trejo to move into the right-hand lane so that he could pass. However, Officer Picou later testified that there was no traffic in the right lane which would have prevented him from passing Trejo.
¶ 3. There is conflicting testimony as to what occurred next. According to the police report, Trejo moved into the right lane after the third time the officer flashed his high-beam lights. However, Officer Picou later testified that Trejo did not respond to these attempts; instead, he asserted that Trejo did not move over until Officer Picou activated his blue flashing lights. Regardless, upon the officer’s activation of the blue lights, Trejo immediately pulled over. Officer Picou approached the passenger-side window and asked for a driver’s license and proof of insurance. He also questioned Trejo and Nutt about their destination. Trejo presented a valid driver’s license and proof of insurance and informed the officer that the couple was traveling from Houston, Texas, to Ohio. According to the officer, Trejo and Nutt appeared to be sleepy and nervous and a strong odor of air freshener was coming from the vehicle, indicating to Officer Pi-cou that they may have been trying to cover up the smell of drug use. After a criminal history check, it was discovered that Trejo had been previously convicted of drug offenses; however, he had no outstanding warrants. Officer Picou ordered Trejo out of the vehicle and inquired about his criminal history. Trejo mentioned that he had been arrested for stealing a car several years ago; he did not mention any prior drug offenses. Officer Picou then requested consent to search the ear, but Trejo refused. Officer Picou informed Trejo that he was going to run his drug-sniffing dog around the car, and he asked Nutt to exit the vehicle. When she complied, Officer Picou noticed a bulge underneath her shirt in her midsection. He frisked her person and recovered four packages of cocaine. The officer handcuffed Nutt with his only pair of handcuffs, ordered Trejo to lie on the ground until backup arrived, and proceeded to read the couple their Miranda rights.
¶ 4. On November 29, 2005, Trejo was indicted for possession of cocaine with intent to sell. Prior to trial, Trejo filed a motion to suppress the evidence of the cocaine, asserting that Officer Picou lacked probable cause or reasonable suspicion to initiate the traffic stop and that the length of the detention “lasted longer than necessary to effect the purpose of the stop.” At the suppression hearing, which was held immediately prior to trial on April 1, 2008, Officer Picou admitted that Trejo had not violated any traffic law, nor was Trejo operating the vehicle in an erratic manner. Rather, the officer claimed that the stop *705 was made for the following reasons: (1) concern that Trejo may have been tired or intoxicated; (2) the fact that Trejo had a Texas license plate; and (3) Trejo’s failure to respond to the officer’s attempts to move him into the right lane of traffic, coupled with his reduced rate of speed. The circuit court overruled Trejo’s motion to suppress stating that the officer had probable cause to stop Trejo for safety reasons, based upon the fact that he was traveling in the left-hand lane and failed to respond to the officer’s flashing high-beam lights.[1] Further, the circuit court intimated that Trejo lacked standing to object to the evidence as the drugs were found on Nutt, not in the vehicle.
¶ 5. Trejo was convicted of possession of cocaine with intent to sell and a judgment of conviction was entered on April 8, 2008. Trejo filed a motion for a new trial and/or a motion for a judgment notwithstanding the verdict on April 11, 2008, which the circuit court subsequently denied. Following a sentencing hearing on December 12, 2008, Trejo received an enhanced sentence of sixty years as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007) and as a subsequent drug offender pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2005) in the custody of the MDOC. He was also ordered to pay a fíne of two million dollars. He now appeals his conviction citing several assignments of error. As we find the first issue on appeal to be disposi-tive of the case, we decline to address the remaining issues.
Whether the circuit court erred in denying Trejo’s motion to suppress.
¶ 6. In his motion to suppress, Trejo argued that the cocaine should not have been admitted as evidence as Officer Picou lacked probable cause or reasonable suspicion to stop Trejo’s vehicle. Therefore, the initial stop was not justified and, thus, resulted in an unreasonable search and seizure, violating the Fourth Amendment to the United States Constitution. The Fourth Amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]” See also Miss. Const, art. 3, § 23 (1890). However, the State argues that since the drugs were found on Nutt’s person and not in Trejo’s vehicle, Trejo had no standing to object to the search of her person. This contention is based on the circuit court’s finding at trial that since the drugs were not found in the vehicle, there was nothing for the court to suppress.
¶ 7. In Brown v. State, 19 So.3d 85, 89 (¶ 7) (Miss.Ct.App.2008), this Court stated that:
Whether a defendant has standing to challenge a seizure is a question of law; therefore, we address this issue de novo. United States v. Kye Soo Lee, 898 F.2d 1034, 1037 (5th Cir.1990). “The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.” Lyons v. State, 942 So.2d 247, 250 (¶ 11) (Miss.Ct.App.2006)[.]
Here, both the State and the circuit court failed to acknowledge the “fruit of the poisonous tree” doctrine. This doctrine states that all evidence acquired as a result of an unreasonable search, including that *706 evidence that is subsequently or indirectly acquired from, the search, is inadmissible. Jackson v. State, 418 So.2d 827, 829 (Miss. 1982) (citations omitted); see also Powell v. State, 824 So.2d 661, 667 (¶ 27) (Miss.Ct. App.2002) (“[t]he exclusionary rule is to bar use of the fruit of the poisonous tree of a Fourth Amendment violation”). The cocaine was obtained from Nutt’s person as a result of the traffic stop, which resulted in a “seizure” of Trejo. See Tate v. State, 946 So.2d 376, 382 (1117) (Miss.Ct.App. 2006) (“Traffic stops are considered to be seizures within the meaning of the Fourth Amendment.”) (citing United States v. Grant, 349 F.3d 192, 196 (5th Cir.2003)). Consequently, if the initial traffic stop was a violation of Trejo’s constitutional right under the Fourth Amendment, the cocaine is the “fruit” of that illegal seizure, and Trejo, as driver of the vehicle, has standing to assert the violation.
¶ 8. This Court analyzes an unlawful-seizure claim under a mixed standard of review. Brown, 19 So.3d at 89 (¶ 9) (citing Dies v. State, 926 So.2d 910, 917 (¶ 20) (Miss.2006)). We conduct a de novo review in determining “the existence of probable cause.” Id. (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). However, we limit our de novo review to the circuit court’s “decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.” Id. (quoting Ornelas, 517 U.S. at 699, 116 S.Ct. 1657). “In determining whether evidence should be suppressed, a [circuit] court’s findings of fact are not disturbed on appeal absent a finding that the [circuit court] judge applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence.” Id. (quoting Clair v. State, 845 So.2d 733, 734-35 (¶ 4) (Miss.Ct.App.2003)).
¶ 9. The United States Supreme Court, in Terry v. Ohio, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), “held that an officer may, consistent with the Fourth Amendment, make a brief, investigatory detention without a warrant when the officer has a reasonable suspicion that criminal activity is afoot.” Rainer v. State, 944 So.2d 115, 118 (¶6) (Miss.Ct.App. 2006). An investigatory stop under Terry, requires “a two-tiered reasonable suspicion inquiry: 1) whether the officer’s action was justified at its inception, and 2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place.” Tate, 946 So.2d at 382 (¶ 17) (quoting Grant, 349 F.3d at 196). “As a general matter, the decision to stop an automobile is reasonable where the police [officer has] probable cause to believe that a traffic violation has occurred.” Goff v. State, 14 So.3d 625, 641 (¶ 48) (Miss.2009) (quoting Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). To determine whether probable cause exists, we must look at the “the totality of the circumstances!,]” viewing the evidence “in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search.” Howard v. State, 987 So.2d 506, 510 (¶ 12) (Miss.Ct.App.2008) (quoting Comby v. State, 901 So.2d 1282, 1286 (¶ 7) (Miss.Ct. App.2004)). We must look at “what the officers knew before they initiated the search” in order to determine whether the suspicion for the stop was reasonable. Rainer, 944 So.2d at 118 (¶ 6) (citing Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)). In making an investigatory stop, an officer “ ‘must be able to point to specific and articulable facts’ that justify the intrusion.” Id. (quoting Terry, 392 U.S. at 21, 88 S.Ct. 1868). “ ‘[M]ere hunches’ or ‘looking suspicious’ is insufficient to establish reasonable suspi *707 cion for an investigatory stop.” Qualls v. State, 947 So.2d 865, 371 (¶ 16) (Miss.Ct. App.2007) (citing Anderson v. State, 864 So.2d 948, 951 (¶ 13) (Miss.Ct.App.2003)). In other words, “there must be an objective basis for the stop.” Adams v. City of Booneville, 910 So.2d 720, 725 (¶ 16) (Miss. Ct.App.2005) (citing United States v. Escalante, 239 F.3d 678, 680-81 (5th Cir.2001)). However, “if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no ‘objective basis’ for the stop, and the stop is illegal.” Id. (quoting Escalante, 239 F.3d at 681).
¶ 10. To support his assignment of error, Trejo cites Couldery v. State, 890 So.2d 959 (Miss.Ct.App.2004), which is analogous to the facts of the present case. Robert Couldery was driving a rental vehicle with an out-of-state license plate along a Mississippi highway. He was traveling in the right-hand lane, but upon encountering a police vehicle on the right shoulder of the interstate, Couldery moved into the left lane and continued traveling in that particular lane. The officer, after short observation, pulled him over. Couldery was not violating any traffic law and had no outstanding warrants. Couldery, like Trejo, refused a search of his vehicle. However, after a K-9 search gave the officer reasonable suspicion, he searched the car. Illegal drugs were found in the backseat, and Couldery was arrested and subsequently convicted. The Mississippi Supreme Court reversed and rendered Couldery’s conviction, holding that the initial traffic stop was an unreasonable search and seizure under the Fourth Amendment as “Couldery’s actions in driving in the left lane of the right half of the interstate highway did not constitute a criminal offense as contemplated in [Mississippi Code Annotated section 63-3-601 (Rev.1996) ].” Id. at 963 (¶ 13).
¶ 11. In the present case, Officer Picou stated that his subjective basis for stopping Trejo was a “concern” that Trejo was tired or impaired based solely upon his failure to move over into the right lane when the officer flashed his high-beam lights into Trejo’s vehicle. He later admitted that he also took into consideration the fact that Trejo’s vehicle had a Texas license plate, furthering his suspicion that Trejo might be “fatigued” from traveling. However, the record does not demonstrate that Officer Picou ever suspected Trejo of any traffic violation. Trejo was not weaving or driving erratically, and there is no indication that Trejo was even aware that he was being followed by law enforcement; the record merely reflects that a vehicle flashed its high-beam lights into Trejo’s vehicle three times. This lack of awareness is supported by the fact that when Officer Picou turned on his flashing blue lights, Trejo promptly responded and pulled over to the side of the road. The State concedes that Officer Picou repeatedly testified that Trejo committed no traffic violation. Officer Picou merely testified that he had a “concern” that Trejo may have been tired or intoxicated. We find that the officer’s suspicion that Trejo was tired or impaired is not sufficient to constitute a reasonable basis for the traffic stop.
¶ 12. At the suppression hearing, it was additionally argued that Trejo may have violated statutory authority which requires slower traffic to remain in the right lane of the highway. Further, Officer Pi-cou testified that there are signs along the interstate that advise “slow-moving traffic” to stay in the right lane. However, both Officer Picou and the circuit court judge acknowledged that the traffic signs were merely advisory and that no statute prohibited Trejo from driving in the left lane.
*708 [Defense counsel]: Now, there’s nothing against the law about Mr. Trejo being in the left lane going the speed that he was going, is there?
[Officer Picou]: There’s traffic signs that tell him to go to the right and he’s supposed to abide by the traffic signs. But technically? No.
[Defense counsel]: There’s no statute that prohibits him from driving in the left lane at the speed at which he was driving, is there?
[Officer Picou]: No.
Later, the circuit court judge stated: “In this instance, Mr. Trejo, he was using the left-hand lane, which is okay, but a car comes up behind you; advisory signs on the highway say ‘slower traffic keep right[.]’ ” (Emphasis added). Additional testimony reiterated this point:
[Defense counsel]: And is it against the law to travel in the left lane? Is there any statute that you know of or citation that you know of that can be issued for traveling in the left-hand traffic, left[-]lane traffic on the interstate?
[Officer Picou]: There’s no law that dictates that you can’t travel in the left lane, but there is a law that you must abide by traffic signs. So there are signs out there which tell you to travel in the right lane if you are traveling slower.
[Defense counsel]: Did you cite Mr. Tre-jo for that?
[Officer Picou]: No, I did not.
¶ 13. Although no specific statutory authority was cited at the suppression hearing to support the State’s argument, on appeal the State claims Trejo violated Mississippi Code Annotated section 63-3-603(d) (Rev.2004). As that section requires “vehicle[s] proceeding at less than the normal speed of traffic ” to be driven in the right-hand lane if available for traffic,[2] the State argues that Officer Picou had probable cause to initiate the stop. Officer Picou, however, testified that Trejo was driving at an “appropriate range of speed for that particular area.” He also testified that there was only a “little bit of traffic” on the interstate at that time and that there was no other vehicle in the right-hand lane. Trejo’s rate of speed was ten miles below the posted maximum speed limit and did not fall below the minimum posted speed of 45 mph. There is no evidence that Trejo was, thus, traveling “at less than the normal speed of traffic at the time and place” he was stopped. The mere fact that Officer Picou came upon him at a higher rate of speed does not mean that Trejo was traveling at less than the normal rate of speed. Further, we take judicial notice of the fact that Trejo was stopped only a few miles north *709 of the Jackson metropolitan area, which has a posted maximum speed limit of 60 mph.[3] Therefore, we do not find Trejo’s rate of speed “slow-moving,” “slower-moving,” or “less than ... normal” when compared with the posted speed limits and considering the minimal traffic and late hour. Therefore, the State’s belated justification for the stop is insufficient. As defense counsel, Cynthia Stewart, in her argument on the motion to suppress, aptly summarized:
Mr. Trejo was not breaking any traffic laws. He was not driving in an unsafe fashion. He was not going below the [minimum] speed limit. He was not going above the [maximum] speed limit. He was not crossing the fog line. He was not weaving. He was not swerving. He was not doing anything that justified the stop.
¶ 14. We find that the circuit court erred in denying Trejo’s motion to suppress the evidence of the cocaine. Without the cocaine, there is no remaining evidence to uphold Trejo’s conviction. “The proper remedy for insufficient evidence is for the Court to reverse and render.” Readus v. State, 997 So.2d 941, 944 (¶ 13) (Miss.Ct. App.2008) (citation omitted). Accordingly, we reverse and render Trejo’s conviction and the resulting sentence and fine.
¶ 15. Based on this holding, we need not address Trejo’s remaining claims of error as they have been rendered moot.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS REVERSED, A JUDGMENT OF ACQUITTAL IS RENDERED, AND THE APPELLANT IS DISCHARGED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., NOT PARTICIPATING.

. We note that at one point during the hearing, the judge stated that Trejo did not move over until the third time that the officer had flashed his high-beam lights. However, the judge later corrected himself, stating that Tre-jo did not move over until Officer Picou activated his blue flashing lights.

. Subsection 63-3-603(d) states that:
Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway.
(Emphasis added).
We note that Mississippi Code Annotated subsection 63-3-603(c) (Rev.2004) states that: "Official signs may be erected directing slow-moving traffic to use a designated lane or allocating specified lanes to traffic moving in the same direction, and drivers of vehicles shall obey the directions of every such sign.” (Emphasis added). However, the State does not argue that Trejo’s vehicle was "slow-moving” under the meaning of subsection (c). Rather, it relies upon the provisions of subsection (d) relating to traffic moving less than the normal speed of traffic — that is, slower traffic.

. The police report stated that Officer Picou approached Trejo’s vehicle around mile marker 114 of Interstate 55. The officer testified that he pulled Trejo over approximately one mile later.