# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KM-00087-COA

**ANTIONNE SELLERS A/K/A ANTIONNE JEREMIAH SELLERS**                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2020 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KEVIN DALE CAMP |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| | JOHN HEDGLIN |
| DISTRICT ATTORNEY: | JOHN HEDGLIN |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 01/19/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1. A driver was convicted of driving under the influence (first offense) and an improper-equipment violation. On appeal, the circuit court upheld his conviction for driving under the influence but found there was insufficient evidence to support the improper-equipment charge. He now appeals his conviction of driving under the influence.

### FACTS

¶2. The facts of this case are not in dispute. Around 9:00 at night, a caller notified the Madison Police Department of a reckless driver on Interstate 55 who had "ran off the road

multiple times." Officer William Hall of the Madison Police Department responded to the report and began to follow Antionne Sellers, who matched the description. As Officer Hall followed him, he observed three things which triggered his suspicion. First, Sellers was driving twenty miles an hour below the speed limit. Second, he was swerving in his lane (but not crossing the line). Third, his car had a tag cover that obscured the license plate's expiration date. The officer then initiated a traffic stop for the improper display of the tag cover.

¶3.　　Officer Hall later testified that during the stop he "detected the odor of intoxicating beverage coming off [Sellers'] breath." He also observed that the driver's pupils were dilated. When Officer Hall asked Sellers whether he had been drinking, the driver initially denied having consumed any alcohol, but he later admitted that he had had one beer. Officer Hall then asked Sellers to step out of the car. As he exited the car, the officer "observed some beer cans and a liquor bottle on the passenger's side floorboard."

¶4.　　Sellers consented to three different field sobriety tests. The results of the tests prompted Officer Hall to ask Sellers to provide a sample for a portable breath test. Sellers agreed. Officer Hall testified that Sellers' portable breath test was positive for alcohol. Sellers was then arrested and taken to the Madison Police Department. There, an Intoxylizer 8000 indicated that the driver's breath-alcohol content was .12%. Sellers was charged with driving under the influence and an improper-equipment violation for the tag cover.

¶5.　　Sellers went before the Madison Municipal Court and was convicted of both driving

2

under the influence (first offense) and an improper-equipment violation. He appealed his convictions to the County Court of Madison County, where his case was reviewed de novo in a bench trial. Following the close of the State's case-in-chief, Sellers filed a motion for a directed verdict. The motion was denied, and he did not call any witnesses on his behalf.

¶6. The county court found Sellers guilty of driving under the influence but not guilty of the improper-equipment charge. The court held there was probable cause for the stop, but the evidence was insufficient to find Sellers guilty of the improper-equipment charge beyond a reasonable doubt.

¶7. During the sentencing phase of the trial, the court stated, "This is a first offense, I do believe." Even though Sellers twice admitted to having received a prior DUI in 2010—once in the patrol car and again at the police station—his trial counsel responded in the affirmative, "It is, Your Honor."

¶8. The court then imposed and suspended a sentence of 48 hours of jail time. The court also sentenced Sellers to two years of unsupervised probation, ordered him to pay fines and assessments in the amounts of $688 and $394, and attend MASEP classes.[1]

¶9. Sellers appealed his conviction for driving under the influence to the Circuit Court of Madison County. The circuit court affirmed the county court's judgment. Aggrieved, Sellers now appeals.

---

[1] Mississippi Alcohol Safety Education Program (MASEP) is a statewide, statutorily mandated DUI intervention program.

**DISCUSSION**

¶10.     Sellers asserts the following assignments of error on appeal: (1) the county court erred by denying his motion for a directed verdict "because the officer's observations and articulable facts were insufficient to show probable cause which would have suppressed the evidence"; (2) the county court erred by creating additional grounds to find probable cause; and (3) the county court erred by not suppressing the evidence obtained as a result of the traffic stop. For the sake of clarity and brevity we will address Sellers' first and third assignments of error together.

> **I.     The county court did not err by denying Sellers' motion for a directed verdict.**

¶11.     Sellers argues that the county court erred by denying his motion for a directed verdict because the only evidence supporting his conviction for driving under the influence was inadmissible. More specifically, he alleges that the traffic stop was illegal because Officer Hall lacked probable cause to initiate the stop. Therefore, any evidence obtained as a result of the stop should have been suppressed at trial.

¶12.     "The Fourth Amendment to the United States Constitution and Article 3[,] [S]ection 23 of the Mississippi Constitution protect individuals from unreasonable searches and seizures." *Cameron v. State*, 175 So. 3d 574, 577 (¶8) (Miss. Ct. App. 2015); U.S. Const. amend. IV; Miss. Const. art. 3, § 23. This "prohibition against unreasonable searches and seizures applies to the seizures of the person, including the brief investigatory stops such as the stop of a vehicle." *Howard v. State*, 987 So. 2d 506, 509 (¶12) (Miss. Ct. App. 2008).

4

"And the 'fruit of the poisonous tree' doctrine makes inadmissible tangible evidence obtained incident to an unlawful search or seizure." *Cameron*, 175 So. 3d at 577 (¶8). Therefore, if Sellers' traffic stop was unreasonable, the evidence obtained as a result of the stop would be subject to this exclusionary rule. Accordingly, we will first review whether there was probable cause for the stop.

### A. There was probable cause for the traffic stop.

¶13. Sellers argues that the traffic stop was illegal because Officer Hall did not have probable cause for the stop. "For assignments of error challenging a trial court's judgment on reasonable suspicion and probable cause we employ de novo review." *Adams v. City of Booneville*, 910 So. 2d 720, 722 (¶7) (Miss. Ct. App. 2005). On appeal, "this Court may look to the entire record to determine whether the trial [court's] findings are supported by substantial evidence." *Wallace v. State*, No. 2017-KA-01072-COA, 2019 WL 1771908, at *1 (¶12) (Miss. Ct. App. Apr. 23, 2019), *cert. denied*, 279 So. 3d 1086 (Miss. 2019). "But our review of the trial court's findings on these issues are more deferential and restricted to the historical facts reviewed under the substantial evidence and clearly erroneous standards." *Id*. Therefore, "while we review the lower court's legal conclusions on probable cause and reasonable suspicion de novo, we must accept the fact findings that led the lower court to that legal conclusion unless there is clear error in those fact findings." *Adams*, 910 So. 2d at 722 (¶7).

¶14. "As a general rule, the decision to stop an automobile is reasonable where the police

have probable cause to believe that a traffic violation has occurred." *Henderson v. State*, 878 So. 2d 246, 247 (¶7) (Miss. Ct. App. 2004) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). "The test for probable cause in Mississippi is the totality of the circumstances." *Adams*, 910 So. 2d at 722 (¶8) (quoting *Harrison v. State*, 800 So. 2d 1134, 1138 (¶18) (Miss. 2001)). Probable cause "arises when the facts and circumstances with an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it." *Id*.

¶15. Sellers argues there was no probable cause for the traffic stop, so as a result all of the evidence obtained as a result of the stop should have been suppressed, relying on *Trejo v. State*, 76 So. 3d 702 (Miss. Ct. App. 2010). In *Trejo* we held that "[t]here must be an objective basis for the stop . . . and if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no 'objective basis' for the stop and the stop, is illegal." *Id*. at 707 (¶9). We reversed the defendant's conviction because the only evidence in support thereof was obtained as a result of an illegal stop. *Id*. at 708-09 (¶¶13-14).

¶16. In that case, the record did not demonstrate that the officer ever suspected the defendant of *any* traffic violation. *Id*. at (¶11). The defendant "was not weaving or driving erratically . . . and the state concede[d] that [the officer] repeatedly testified that [the defendant] committed no traffic violation." *Id*. Rather, the officer "merely testified that he

6

had a 'concern' that [the defendant] may have been tired or intoxicated." *Id*. Also, there was no evidence that the defendant was traveling "at less than the normal speed of traffic at the time and place he was stopped." *Id*. at 708 (¶13).

¶17.   The facts of *Trejo* are very different from this case.  Here, Officer Hall had no less than five grounds for probable cause to initiate a traffic stop.  First, the officer received a report of a car matching Sellers' description driving recklessly.  Second, he independently corroborated the report with his own personal observations.  Third, contrary to the defendant in *Trejo*, the officer did see Sellers swerving his car.  Fourth, again unlike *Trejo*, Sellers was driving twenty miles an hour below the speed limit on the interstate.  Officer Hall testified that Sellers was "traveling 50 miles an hour in a 70, which he wasn't keeping up with traffic."[2]  Finally, Sellers was pulled over because Officer Hall believed he was committing an improper-equipment violation by obscuring the expiration date on his license plate with a car tag.  The officer testified that the car tag was "obstructing the view" and that he could not "see the total numbers of the license plate."

¶18.   A traffic stop must have an objective basis.  *Martin v. State*, 240 So. 3d 1047, 1051

_____

[2] Sellers points out that it is not a ticketable offense to drive fifty miles an hour in a seventy mile an hour zone.  *See* Miss. Code Ann. § 63-3-509(2) (Rev. 2013) ("In the event a speed limit of seventy miles per hour is established on any portion of the Interstate Highway System . . . a minimum speed of forty miles per hour shall be established[.]").  However, we review for whether there was probable cause for a stop by looking at the totality of the circumstances.  *Martin*, 240 So. 3d at 1051 (¶13).  Even if Sellers' speed at the time of the traffic stop was within the statutory guidelines, there were other grounds for the stop.

7

(¶14) (Miss. 2017). Viewing the totality of the circumstances, we find that Officer Hall had probable cause to initiate the traffic stop.

¶19. Sellers also contends that one of the bases of probable cause was eliminated because his improper-equipment conviction was not upheld by the county court. However, there is no requirement that a defendant be convicted for the predicate traffic violation to have a valid stop. "The issue is not whether the defendant is ultimately found guilty of the traffic violation; rather, the issue is whether or not the officer reasonably, and objectively believed that a traffic violation had occurred." *Adams*, 910 So. 2d at 724 (¶14). Therefore, Sellers' acquittal on the improper-equipment charge does not mean the officer lacked probable cause for the traffic stop. This issue is without merit.

### B. The exclusionary rule does not apply.

¶20. Sellers claims that because there was no probable cause for the stop, the evidence obtained as a result of the stop was inadmissible.

¶21. Sellers failed to preserve this issue for appeal, making it procedurally barred. As noted by the circuit court and confirmed by our review of the record, Sellers failed to object to the introduction of evidence at trial. The "failure to contemporaneously object to the admission of evidence at trial . . . effectively waives the issue on appeal." *Butler v. State*, 16 So. 3d 751, 755 (¶¶14, 19) (Miss. Ct. App. 2009).

¶22. Procedural bar notwithstanding, this issue is still without merit. "If, in the process of making [a] legitimate search and seizure, an officer uncovered evidence of another crime,

8

as he did here, he is not required to ignore such evidence nor does the Fourth Amendment require its suppression." *Howard*, 987 So. 2d at 510 (¶12). Here, the officer had probable cause to initiate the traffic stop. Therefore, the exclusionary rule does not apply.

### C. The county court did not err by denying Sellers' motion for a directed verdict.

¶23. Finally, we address Sellers' claim that the county court erred by denying his motion for directed verdict. "Motions for directed verdict challenge the legal sufficiency of the evidence[.]" *Starkey v. State*, 941 So. 2d 899, 902 (¶7) (Miss. Ct. App. 2006). "This Court follows our supreme court's standard in reviewing denials of motions for directed verdict and will reverse only when the evidence is such that 'reasonable and fair-minded jurors could only find the accused not guilty.'" *Id*. (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).

¶24. Officer Hall was first notified by dispatch that another driver had reported that Sellers had been driving recklessly and even "ran off the road multiple times." Once the officer responded to the report and began to follow Sellers, he observed the driver swerving in his lane and driving twenty miles an hour below the speed limit on the interstate.

¶25. Officer Hall testified that when he initiated the traffic stop, he noticed that Sellers' pupils were dilated, and he "detected the odor of intoxicating beverage coming off [Sellers'] breath." Additionally, when Sellers exited the car, he "observed some beer cans and a liquor bottle on the passenger's side floorboard." The officer conducted field sobriety tests, which indicated impairment, and a portable breath test, which was positive for alcohol. At the

police station, the Intoxylizer 8000 indicated that Sellers' breath-alcohol content was .12%—well above the legal limit.

¶26. When viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to find Sellers guilty of driving under the influence. This issue is without merit. The circuit court did not err in affirming the county court's decision.

## II. The county court properly viewed the evidence before it.

¶27. Sellers claims that the county court "created" additional grounds to find probable cause because "the judge is not a law enforcement officer observing an alleged violation" and was limited to the officer's testimony. He argues that the court improperly found probable cause from the video evidence instead of the observations made by Officer Hall.

¶28. "But we note again that the probable cause inquiry looks to the totality of the circumstances." *Adams*, 910 So. 2d at 725 (¶19). Therefore, it was not error for the judge to consider all of the relevant factors present, including the video evidence, in order to gain a clearer picture of the totality of the circumstances confronting the officer at the time. This argument lacks merit.

¶29. Sellers' conviction of driving under the influence is **AFFIRMED**.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**