ON WRIT OF CERTIORARI

LAMAR, Justice, for the Court:
¶ 1. In this certiorari case, the Court of Appeals reversed David Trejo’s conviction and sentence for possession of a controlled substance with intent to distribute, finding the State had violated David Trejo’s Fourth Amendment right against unreasonable seizure. The Court of Appeals held that the arresting officer lacked probable cause or reasonable suspicion to make *686 the traffic stop[1] that led to the discovery of cocaine; thus, the trial court should have suppressed the cocaine as fruit of the poisonous tree. While we agree that the officer lacked probable cause or reasonable suspicion to stop Trejo’s vehicle, we review the case to determine whether the stop was reasonable under the community care-taking function first pronounced in Cady v. Dombrowski.[2] Finding the stop unreasonable under that doctrine too, we affirm the Court of Appeals’ reversal of Trejo’s conviction and sentence.
Facts
¶ 2. Officer Chris Picou was traveling North on 1-55 at approximately 1:17 a.m. when he came upon a red Chevrolet SUV with a Texas license plate traveling in the left-hand or inside lane. The SUV was traveling approximately 58-60 miles per hour in an area where the minimum posted speed limit is 45 miles per hour and the maximum is 70 miles per hour. Picou was traveling 70 miles per hour in the left-hand lane behind Trejo when he flashed his bright lights for the SUV to move over so that he could pass. When the driver failed to change lanes, Picou flashed his brights two more times, with ten seconds passing between each flash. After the third flash,[3] Picou initiated his blue lights, and the driver immediately pulled onto the interstate shoulder.
¶ 3. Picou testified that he pulled over the SUV because he was concerned the driver was intoxicated or tired. Picou testified that he did not stop the SUV based on any traffic violation. Picou also testified there was no traffic in the right lane which would have prevented him from passing the SUV.
¶ 4. When Picou approached the vehicle, he noticed that the driver, David Trejo, did not have slurred speech but appeared tired, glassy-eyed, and nervous. His female passenger, Pebbles Nutt, seemed groggy. Picou also noticed that the car smelled strongly of fabric softener, which in his experience[4] is used to cover the odor of controlled substances. He then requested Trejo’s driver’s license and checked his criminal history, which revealed previous convictions for possession of a controlled substance.
¶ 5. When Picou questioned Trejo about his criminal history, Trejo reported only a conviction for stealing an automobile. Pi-cou also ascertained that Trejo was traveling from Houston, a “source city” for drugs, to Ohio, a “source area” for distribution of drugs. Picou then asked for permission to search Trejo’s vehicle for controlled substances, and Trejo denied permission. Picou informed Trejo that he was going to run a dog around the vehicle, and requested that Trejo and Nutt stand away from the vehicle. When Nutt exited the car, she quickly turned her back to Officer Trejo, which further aroused his suspicion. Picou instructed Nutt to turn around to make sure she had no weapons, and when she did, he saw a large bulge under her clothing at her midsection. With the back of his hand, Picou felt the bulge. He immediately recognized that Nutt had strapped a controlled substance to her body, and he recovered two kilograms of cocaine.
*687 ¶ 6. Trejo was indicted and found guilty of possessing cocaine with intent to sell in violation of Mississippi Code Section 41-29-139 and sentenced to sixty years as a habitual offender. Prior to trial, Trejo filed a motion to suppress the cocaine, which the trial court denied. The trial court found that Trejo was stopped for “safety reasons,” namely “to check for the impairment of the driver, whether it was alcohol or sleep deprivation or whatever] else[,]” to prevent an accident.
Court of Appeals’ Opinion
¶7. Trejo appealed his conviction and sentence, arguing the circuit court erred in denying his motion to suppress.[5] The Court of Appeals did not address the circuit court’s finding that this case involved a “safety” stop, as opposed to an “investigatory stop.”[6] Rather, the Court of Appeals found that the initial traffic stop was an “investigatory stop” and looked to Terry v. Ohio[7] to complete its analysis.[8] The Court of Appeals determined that, since Picou’s “suspicion that Trejo was tired or impaired is not sufficient to constitute a reasonable basis for the traffic stop[,]” then “there was no probable cause or reasonable suspicion to justify the initial traffic stop....”[9] The Court of Appeals then concluded that the cocaine was “fruit of the poisonous tree[,]” without which “there is no remaining evidence to uphold Trejo’s conviction.”[10] It reversed and rendered a judgment of acquittal for Trejo.[11]
Discussion
¶ 8. Aggrieved by the Court of Appeals’ decision, the State filed a petition for cer-tiorari with this Court. Although we conclude, as did the Court of Appeals, that there was no probable cause or reasonable suspicion of criminal activity to justify the stop, we ordered additional briefing to address the community caretaking function in light of the trial court’s finding that Picou had performed a “safety” stop.
¶ 9. The United States Supreme Court first applied the community caretaking function in Cady v. Dombrowski[12] In that case, the Supreme Court upheld the search of an impounded automobile after its driver, an off-duty police officer, was arrested for drunk driving after reporting an accident.[13] The police searched the vehicle without a warrant to look for the off-duty officer’s service revolver and found evidence of another crime.[14] The off-duty officer moved to suppress the evidence, but the Court upheld the search, reasoning:
[Sjtate and local police officers, unlike federal officers, have much more contact with vehicles for reasons related to the operation of vehicles themselves. All States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may *688 be operated on public streets and highways.
Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community care-taking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.[15]
The Court found the search reasonable, as the police were “simply reacting to the effect of an accident — one of the recurring practical situations that results from the operation of motor vehicles and with which the local police must deal every day.”[16] Furthermore, the Court noted that it was reasonable for the officers to search the vehicle to recover the revolver “for the safety of the general public who might be endangered if an intruder removed a revolver” from the vehicle.[17]
¶ 10. The State argues that this Court should adopt the community caretaking function, as Picou was acting in his duty to protect the public’s safety when he stopped Trejo’s vehicle. It argues Picou reasonably developed suspicion of criminal activity after effecting the stop.
¶ 11. Conversely, Trejo argues the Supreme Court has used the community caretaking function only in support of inventory searches of impounded cars. Tre-jo argues we should not extend the function to create a new or separate exception to the warrant requirement. He also argues that the stop does not meet the community caretaking function even if we adopt and apply it in this case.
¶ 12. Numerous jurisdictions have applied the community caretaking function beyond the context of Cady to instances such as the present. And this Court recognized the doctrine in Floyd v. City of Crystal Springs.[18] In that case, we were confronted with an officer’s stop of a vehicle based solely on a citizen complaint of reckless driving.[19] The officer stopped the driver and found an opened bottle of vodka on the seat and arrested the driver for driving under the influence.[20]
¶ 13. In Floyd, the State argued this Court should evaluate the stop under the following standard: “ ‘[W]hen police cross a threshold not in their criminal investigatory capacity, but as part of their community caretaking function, it is clear that the standard for assessing the Fourth *689 Amendment propriety of such conduct is whether they possessed a reasonable basis for doing what they did.’ ”[21] While we acknowledged the community caretaking function in that case, we ultimately upheld the stop as reasonable under the reasonable-suspicion standard.[22]
¶ 14. We find “no reasoned argument in support of a categorical refusal to apply the community caretaking exception to vehicle stops[,]”[23] and we conclude that the community caretaking function in Cady may apply in contexts other than inventory searches, as the police provide many functions apart from investigating criminal activity. But only “[u]nder appropriate circumstances [may] a law enforcement officer ... be fully justified in stopping a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity.”[24] In applying the community caretaking function, “[t]he ultimate standard ... is reasonableness.” [25] We review the determination of reasonableness under a de novo standard, but review findings of historical fact for clear error.[26] As with other Fourth Amendment analyses, this Court will not try to determine the subjective intent of the person making the stop but will examine whether the stop is objectively reasonable[27] In doing so, we look to whether the stopping officer can point to “ ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant’ ” the stop.[28] The question becomes whether a reasonable person, “given the totality of the circumstances, would believe [the individual] is in need of help ”[29] or that the safety of the public is endangered.[30] However, courts must carefully analyze the totality of the circumstances, so that the community caretaking function is “ ‘cautiously and narrowly applied in order to minimize the risk that it will be abused or used as a pretext for conducting an investigatory [stop and] search for criminal evidence.’ ”[31]
¶ 15. We begin our analysis by noting that at least two other jurisdictions applying the community caretaking function have concluded that stops effected under similar circumstances were unreasonable.[32] Likewise, upon reviewing the *690 totality of the circumstances in this case, we find the trial judge erred in finding the stop was reasonable under the Fourth Amendment. We are unable to conclude that a reasonable person would have believed Trejo was in need of help or that the public was endangered.
¶ 16. Because of the risk of danger to a driver as well as the traveling public, we agree that it would be reasonable for a police officer to stop an individual who appears to be falling asleep while driving. However, the facts presented here simply do not support such an inference. There was no evidence of erratic driving. Trejo was traveling approximately 10-12 miles per hour below the maximum speed limit of 70 miles per hour and well above the minimum speed limit of 45 miles per hour in the left-hand lane around 1:00 a.m. We do not think his speed was so slow that a reasonable person would believe it indicative of distress. We also do not find that Trejo’s failure to change lanes after Picou flashed his bright lights was necessarily indicative of distress, nor was it so when considered with the other facts. Picou flashed his bright lights in quick succession on a deserted stretch of interstate. And no traffic prevented Picou from passing Trejo in the right lane. We find the following analysis by the Court of Appeals especially relevant:
Trejo was not weaving or driving erratically, and there is no indication that Trejo was even aware that he was being followed by law enforcement.... This lack of awareness is supported by the fact that when Officer Picou turned on his flashing blue lights, Trejo promptly pulled over to the side of the road.[33]
Therefore, we find that the facts presented at the suppression hearing do not justify a reasonable belief that Trejo needed help or that the public was endangered, and as such, the trial court should have granted Trejo’s motion to suppress.
Conclusion
¶ 17. In applying the community care-taking function to the facts of this case, we find the trial court erred in denying Tre-jo’s motion to suppress the cocaine as evidence. As noted by the Court of Appeals, “[wjithout the cocaine, there is no remaining evidence to uphold Trejo’s conviction.” [34] Therefore, we affirm the Court of Appeals’ judgment to reverse and render Trejo’s conviction and sentence.
¶ 18. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS REVERSED AND RENDERED.
WALLER, C.J., AND CARLSON, P.J., CONCUR. KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.; DICKINSON, P.J., CONCURS IN PART AND IN RESULT *691 WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, J„ CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J. CHANDLER AND KING, JJ., NOT PARTICIPATING.

. It is undisputed that the Fourth Amendment applies to vehicle stops. Floyd v. City of Crystal Springs, 749 So.2d 110, 114 (Miss. 1999) (citations omitted).

. Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

. Picou flashed his bright lights between mile markers 114 and 115.

. Picou had nineteen years of law enforcement experience, and his official title is "master sergeant in the Narcotics Division.”

. Trejo v. State, 76 So.3d 702, 704-05 (Miss. Ct.App.2010).

. We note the Court of Appeals erroneously referred to Couldery v. State, 890 So.2d 959 (Miss.Ct.App.2004), as a decision of this Court. Id. at 963-964.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. Trejo, at 705-07.

. Id. at 703-04, 707.

. Id. at 705-07, 709.

. Id. at 709.

. Cady v. Dombrowski, 413 U.S. 433, 436, 448, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

. Id.

. Id. at 437, 93 S.Ct. 2523.

.Id. at 441, 93 S.Ct. 2523; see also Colorado v. Bertine, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (finding police engaged in caretaking duties in inventory search of a lawfully impounded vehicle); South Dakota v. Opperman, 428 U.S. 364, 372-75, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (finding inventory search reasonable because police caretaking procedures are designed to secure and protect vehicles and their contents).

. Cady, 413 U.S. at 446, 93 S.Ct. 2523.

. Id. at 447, 93 S.Ct. 2523.

. Floyd v. City of Crystal Springs, 749 So.2d 110, 114-15 (Miss. 1999).

. Id. at 112.

. Id. at 112-13.

. Id., at 117 (quoting State v. Alexander, 124 Md.App. 258, 721 A.2d 275, 284-85 (Md.Ct. Spec. App. 1998)).

. Id. at 118.

. People v. Madrid, 168 Cal.App.4th 1050, 85 Cal.Rptr.3d 900, 906 (Cal.Ct.App.2008).

. State v. Brown, 509 N.W.2d 69, 71 (N.D. 1993).

. Cady, 413 U.S. at 439, 93 S.Ct. 2523.

. Floyd, 749 So.2d at 113.

. See generally Brigham City, Utah v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (Court ruling that it had "repeatedly rejected” considering an officer’s subjective intent and that "subjective motivation is irrelevant”).

. Gonzales v. State, 963 So.2d 1138, 1142 (Miss.2007) (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

. Corbin v. State, 85 S.W.3d 272, 276 (Tex. Crim.App.2002) (quoting Wright v. State, 7 S.W.3d 148, 151 (Tex.Crim.App. 1999)).

. See Cady, 413 U.S. at 447, 93 S.Ct. 2523.

. State v. Rinehart, 617 N.W.2d 842, 844 (S.D.2000) (quoting Com. v. Waters, 20 Va. App. 285, 456 S.E.2d 527, 530 (Va.App. 1995)).

. See Rowe v. Maryland, 363 Md. 424, 769 A.2d 879 (2001) (stop unreasonable where defendant was driving at 1:00 a.m. in far right lane of interstate at 50-54 miles per hour where speed limit was 65 and defendant’s car had crossed white edge-line onto shoulder); Corbin v. State, 85 S.W.3d 272 (Tex.Crim.App. *690 2002) (stop unreasonable where defendant was driving 52 miles per hour in 65 miles-per-hour zone at 1:00 a.m. near intersection of interstate and highway, and defendant’s car crossed onto shoulder of road for less than one second). But see State v. Martinez, 260 N.J.Super. 75, 615 A.2d 279 (N.J.Super.Ct.App.Div.1992) (stop reasonable where defendant was traveling less then 10 miles per hour on a 25 miles-per-hour residential street at 2 a.m.); State v. Rinehart, 617 N.W.2d 842 (S.D.2000) (stop reasonable where defendant was traveling at 1:05 a.m. on a deserted street going 20-25 miles per hour where speed limit was 40 miles per hour); Ortega v. State, 974 S.W.2d 361 (Tex.Ct.App. 1998) (stop reasonable where defendant was driving "[i]n the early morning hours” a 1979 Ford Bronco at 18-20 miles per hour in a 50 miles-per-hour zone).

. Trejo, at 707.

. Id. at 709.