PIERCE, Justice,
dissenting:
¶21. Respectfully, I dissent from the majority’s decision to reverse Carl Cook’s conviction for misdemeanor driving under the influence (DUI). Consistent with this Court’s decision in Floyd v. City of Crystal Springs, 749 So.2d 110 (Miss.1999), both the trial court and the Court of Appeals correctly found that the authorities had reasonable suspicion to conduct an investigatory traffic stop in this instance.
FACTS
¶ 22. At trial in county court, Cook moved to dismiss his DUI charge following the State’s case-in-chief, on the basis that his Fourth-Amendment rights were violated. Cook claimed that authorities pulled him over based on a “be on the lookout” (BOLO) report from a police dispatcher that was based on an uncorroborated anonymous tip that lacked sufficient indi-cia of reliability. Cook thus argued that the stop was illegal and any evidence obtained by the authorities following the illegal stop was inadmissable. The county court preserved Cook’s motion and ordered briefs from both parties on the issue. After receiving those briefs, the county judge denied Cook’s motion and issued the following factual findings:
On the afternoon of March 12, 2011, Officer Timothy Ware ... and Deputy Fred Lovett ... heard a BOLO [“be on the lookout”] ... for a vehicle alleged to be driving erratically and/or recklessly, flashing its headlights at other motorists, and “flashing” what was purported to be a badge of some type in an apparent attempt to pull over other motorists). That BOLO, which came to both officers via official police radio channels, contained very specific information, including the make, model, color, and license tag number of a particular vehicle which was allegedly engaged in the potentially illegal conduct. The operator of the vehicle was also described in general terms in the BOLO. Finally, the area where the strange driving conduct was occurring was described with speci-ficityt,] ... an area within the jurisdiction of both [officers].
*542 Almost simultaneously, both officers spotted a vehicle matching the precise description given in the BOLO, down to the exact license number. Contact with that vehicle was made in the [officer’s jurisdiction], the license number was verified by Officer Ware, and a traffic stop was immediately initiated by him, followed closely by back-up from Deputy Lovett. It is undisputed that Officer Ware did not personally observe any traffic violations by the subject vehicle and its operator prior to initiating the traffic stop. Upon the officers’ approach to the vehicle, many indicia of [DUI] were immediately observed by them, including: smell of an intoxicating beverage, slurred speech, and disorientation of the operator. Further, within • the first few moments of the encounter, [Cook] admitted to having consumed alcoholic beverage and to having “flashed” a business card, not a badge, at other motorist(s). [Cook] also had “watery” eyes, swayed in a circular motion upon . exit, and held on to the vehicle for support after exiting. A[p]ortable [b]reath [t]est (PBT) was administered to [Cook], and it registered positive for the presence of alcohol. Finally, Officer Ware reported that [Cook] was extremely nervous and disoriented throughout the original encounter and declined to take the Intoxilyzer 8000 test back at the station, stating that he “ ‘probably would not pass’ ” that test. For those and other reasons not mentioned herein, the court found proof beyond a reasonable doubt that [Cook] was, in fact, operating a motor vehicle while under the influence of alcohol.
¶ 23. The county judge’s conclusions of law relied primarily on this Court’s decision in Floyd. The county judge included the following language from Floyd, in which this Court held:
[G]iven reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest.... Such an investigative stop of a suspect may be made so long as an officer has “a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a felony” ... or as long as the officers have “some objective manifestation that the person stopped is, or is about to be engaged in criminal activity.”
Floyd, 749 So.2d at 114.
¶ 24. Applying Floyd, the county judge concluded:
In the instant case, the BOLO carried information about reckless/erratic driving. However, it included the additional information that the driver of the vehicle had been flashing his lights at other motorists and flashing what appeared to the reporter in this case to be some type of badge. Not only were these officers confronted with a report of dangerous driving conduct, but they were also alerted to the very real possibility that someone might be impersonating a law enforcement officer and attempting to pull over unsuspecting members of the motoring public. If there was ever an ambiguous situation which warranted immediate investigation, this was such a situation. The report of reckless driving was enough. As the Court held in Floyd, ... “[t]o cling to a rule which would prevent a police officer from investigating a reported complaint of reckless driving would thwart a significant public interest in preventing the mortal danger presented by such driving.” Id. Add to that the potential criminal nature of the other bizarre conduct described in the BOLO and the potential danger to *543 the public from one pretending to be a law enforcement officer, and the officers in this case could have been outright derelict in the duty to protect the public had they not acted swiftly as they did here. >
It should also be noted that the information contained in the BOLO in the instant case was very specific. The offending vehicle was described by make, model, color, exact license number, and location. Before making the stop, the officers verified every one of those facts as being present in [Cook]’s vehicle. Under the totality of those circumstances, the balancing test here goes strongly in favor of the law enforcement officers, particularly compared to the brief intrusion into the travels of [Cook] for purposes of resolving the obviously ambiguous situation described in the BOLO. According to the credible testimony, the interaction with [Cook] following the stop would likely have been very brief but for the indicia of intoxication displayed by [Cook] immediately upon contact with the officers. The fact that things went rapidly and steadily downhill for [Cook] following that contact does not enter the equation; what matters is what happened before the stop.
[[Image here]]
Under all the circumstances of this case, ... this court finds that the facts herein not only allowed but in effect mandated the law enforcement action taken here via investigatory stop. The details of the BOLO, and the officer’s confirmation of those details within minutes by spotting the exact vehicle exactly where the BOLO had stated it would be, create the constitutionally mandated “sufficient in-dicia” of reliability.
DISCUSSION
¶ 25. As noted by the majority, seldom will an anonymous tip of undisclosed reliability, standing alone, establish the requisite level of suspicion necessary to justify an investigative detention. Floyd, 749 So.2d at 118. That is because “ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations, and an anonymous tipster’s veracity is ‘by hypothesis largely unknown, and unknowable.’” Navarette v. California, — U.S. -, 134 S.Ct. 1683, 188 L.Ed.2d 680, 134 S.Ct. at 1688 (2014) (quoting Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). Under appropriate circumstances, however, “an anonymous tip can demonstrate ‘sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop.’ ” Id. (quoting White, 496 U.S. at 327).
¶ 26. We spoke to this in Floyd, which, as the majority points out, is distinguishable from the case before us, in that, unlike here, the person who called authorities was not anonymous. Floyd expressed, though, again as the majority points out, that an anonymous tip can be sufficiently credible and reliable and provide sufficient basis of knowledge to justify an investigatory stop. Floyd, 749 So.2d at 119 (citing State v. Melanson, 140 N.H. 199, 665 A.2d 338, 340-41 (1995)) (holding that unknown caller’s report that provided a specific description of a car whose driver was thought to be intoxicated, knowledge of its exact location at the time, and specific information of its movements, reasonably supported the conclusion, for the purpose of determining whether officer had reasonable suspicion to stop the vehicle, that the basis of the caller’s knowledge was his personal observation of the vehicle).
¶ 27. Floyd reiterated that the test is “one of reasonableness, and neither this Court nor the United States Supreme Court has articulated a concrete rule to *544 determine what circumstances justify an investigatory stop.” Id. (citing Green v. State, 348 So.2d 428, 429 (Miss.1977)). The question must be approached on a case-by-case basis. Id. In determining the reasonableness of an investigatory stop “less intrusive than a traditional arrest depends ‘on a balance between the public interest and the individual’s right to personal security from arbitrary interference by law officers.’ ” Id. (quoting Brown v. Texas, 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). “Consideration of the constitutionality of seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.” Id. (quoting Brown, 443 U.S. at 50-51, 99 S.Ct. 2637).
¶ 28. Here, Officer Ware received a “BOLO” report of a vehicle that was driving erratically and whose driver was flashing what appeared to be a law-enforcement badge at other motorists. The report provided the vehicle’s location and gave a very specific description of the vehicle — its make, model, color, and license-plate number. Upon receiving the report and spotting the vehicle, Officer Ware proceeded behind the vehicle and verified the vehicle’s license-plate number with the number reported. Officer Ware observed no erratic driving patterns by the motorist. Concerned, though, with the report that the driver of the vehicle had flashed what purported to be a law-enforcement badge at another motorist, Officer Ware felt obligated to stop the vehicle to investigate what had been reported. According to Officer Ware, he decided to make contact with the vehicle in order to find out “if there was a police officer in some distress, a police officer in route to something, ... or if somebody was impersonating a police officer.”
¶ 29. Based on the information relayed to Officer Ware, it cannot be said that Officer Ware lacked reasonable grounds to act. As the county court found, “[ujnder the totality of those circumstances, the balancing test here goes strongly in favor of the law enforcement officers, particularly compared to the brief intrusion into the travels of [Cook] for purposes of resolving the obviously ambiguous situation described in the BOLO.”
¶ 30. Indeed, the circumstances of this case presented an “ambiguous situation,” which necessitated a common-sense response. As articulated by Officer Ware, his concern, based on the “bizarre” conduct reported to and relayed by the 911 dispatcher, was not just for the safety of other motorists, but also for the subject individual’s. Given that a possible emergency situation was at hand, Officer Ware reasonably acted as expected.
¶ 31. Floyd explained:
The local policeman ... is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so.
Floyd, 749 So.2d at 117 (quoting United States v. West, 460 F.2d 374, 375-76 (5th Cir.1972)). Acknowledging the community-caretaking function, adopted by other jurisdictions and ultimately by this Court in Trejo v. State, 76 So.3d 684 (Miss.2011), Floyd said: “The question is whether there were reasonable grounds to believe that some kind of an emergency existed, that is, whether there was evidence which would lead a prudent and reasonable official to see the need to act.” Floyd, 749 So.2d at 117 (quoting State v. Alexander, 124 Md.App. 258, 721 A.2d 275 (Spec.App.1998)); see also Trejo, 76 So.3d *545 at 689 (“The question becomes whether a reasonable person, given the totality of the circumstances, would believe the individual is in need of help, or that the safety of the public is endangered.”).
¶ 32. As noted in Trejo, Floyd did not expressly adopt the community-caretaking rule, because the Floyd Court upheld the stop at issue in that case as reasonable under the reasonable-suspicion standard. In my opinion, this case does not necessarily fall • under the community-caretaking rule because, as the aforementioned facts plainly illustrate, the reported information was sufficiently credible and reliable to provide a sufficient basis of knowledge to justify Officer Ware’s stop of the vehicle. On the other hand, however, given Officer Ware’s testimony, the circumstances of this ease do meet the standards enunciated by this Court in Trejo.
¶ 33. Nor do I find the circumstances of the case before us on par with the United States Supreme Court’s decision in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). There, in a relatively brief unanimous ruling, the high court held that, absent any other indicia of reliability, an anonymous tip that an individual was in possession of a firearm did not justify a stop and frisk. In so holding, the Supreme Court rejected the government’s argument that firearms were sufficiently dangerous in and of themselves to justify dispensing with the requirement of reliability. The Court, however, was particularly careful to limit its holding to the facts of the case before it, explaining: “The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability.” Id. at 267, 120 S.Ct. 1375. The Court held only “that an anonymous tip lacking indicia of reliability of the kind contemplated in ... White does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm.” Id.
¶ 34. J.L. differs from the case before us in several respects. First, the information here was more reliable. The Court in J.L. emphasized that the anonymous tipster had provided nothing more than a bare-bones description of an individual simply standing at a bus stop. Id. at 273, 120 S.Ct. 1375. There was none of the “predictive” information about individuals’ movements which lent credibility to the anonymous informant in White, supra. Whereas here, another motorist provided a detailed description of the subject vehicle that was on the move and accurately predicted its exact location, information which Officer Ware confirmed within moments of the call. Second, and moreover, the J.L. Court noted the relative lack of urgency confronting the investigating officers. While acknowledging that guns are dangerous, the J.L. Court analogized the situation to one involving an anonymous tip concerning the possession of narcotics. Id. In either case, the contraband could pose a potential public risk, but in neither is the danger necessarily imminent. Id. Not so here. In determining the validity of Officer’s Ware’s stop, it is not unreasonable to consider both the risk of harm resulting from a failure to stop the vehicle, based on the reasons articulated by Officer Ware, and the level of intrusiveness occasioned by a detention. See State v. Richardson, 156 Wis.2d 128, 456 N.W.2d 830, 834 (1990) (reasonableness of stop “is a common sense question, which strikes a balance between the interests of society in solving crime and the members of that society to be free from unreasonable intrusions”) (internal quotation marks and citation omitted). The police intervention in this case consisted of a brief motor-vehicle stop and inquiry, “not a hands-on violation of the person.” See State v. Boyea, 171 Vt. 401, *546 410, 765 A.2d 862, 868 (2000) (holding that police officer could make investigative stop of vehicle based on anonymous tip that vehicle was operating erratically, without personally observing incriminating behavior). The “liberty interest at stake” in the case before us “did not rise to the level which confronted the Court in J.L.” Boyea, 765 A.2d at 868.
¶ 35. Under the above-stated circumstances of this case, a reasonable officer could not have pursued any other prudent course. And I would affirm Cook’s DUI conviction. For these reasons, I respectfully dissent.
RANDOLPH, P.J., LAMAR AND COLEMAN, JJ„ JOIN THIS OPINION.